IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JOSEPH M. R.,[1]                          3:18-cv-01779-BR

        Plaintiff,                    OPINION AND ORDER

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.


**LAURIE B. MAPES**
Attorney at Law
P.O. Box 1241
Scappoose, OR  97056
(503) 543-2900

        Attorney for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

---

    [1] In the interest of privacy this Court uses only the first name and the initial of the last name of the nongovernmental party in this case.  When applicable, this Court uses the same designation for the nongovernmental party's immediate family member.


1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**THOMAS M. ELSBERRY**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2112

          Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Joseph M. R. seeks judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) in which the Commissioner denied Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter for the immediate calculation and payment of benefits.

## ADMINISTRATIVE HISTORY

On April 4, 2017, Plaintiff protectively filed his

application for DIB benefits.  Tr. 25, 189.[2]  Plaintiff initially

alleged a disability onset date of July 11, 2008.[3]  Tr. 189.

Plaintiff's application was denied initially and on

reconsideration.  An Administrative Law Judge (ALJ) held a

hearing on March 23, 2018.  Tr. 25, 49-93.  Plaintiff and a

vocational expert (VE) testified at the hearing, and Plaintiff

was represented by an attorney.  At the hearing Plaintiff also

amended his disability onset date to March 31, 2012.  Tr. 25,

56.

On April 12, 2018, the ALJ issued an opinion in which he

found Plaintiff is not disabled and, therefore, is not entitled

to benefits.  Tr. 25-42.  Plaintiff requested review by the

Appeals Council.  On August 20, 2018, the Appeals Council denied

Plaintiff's request to review the ALJ's decision, and the ALJ's

decision became the final decision of the Commissioner.

Tr. 1-3.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

---

[2] Citations to the official Transcript of Record (#8) filed
by the Commissioner on February 8, 2019, are referred to as
"Tr."

[3] Although the ALJ's decision states Plaintiff alleged
disability beginning on June 11, 2008, (Tr. 25), Plaintiff's DIB
application indicates his disability began on July 11, 2008.
Tr. 189.

On October 15, 2018, Plaintiff filed a Complaint in this Court seeking review of the Commissioner's decision.

## BACKGROUND

Plaintiff was born on March 11, 1977.  Tr. 41, 189. Plaintiff was 35 years old on his alleged amended disability onset date.  Plaintiff has a high-school education and attended college.  Tr. 41, 81.  Plaintiff has past relevant work experience as a caregiver, user-support specialist, and computer-support specialist.  Tr. 40.

Plaintiff alleges disability due to Post-Traumatic Stress Disorder (PTSD), depression, and irritable bowel syndrome (IBS). Tr. 95.

Except as noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 33-37.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must

demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for evaluating a claimant's testimony, resolving conflicts in the medical evidence, and

resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I. The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity (SGA). 20 C.F.R. § 404.1520(a)(4)(i). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R.

§ 404.1509, 404.1520(a)(4)(ii).  *See also Keyser*, 648 F.3d at
724.

At Step Three the claimant is disabled if the Commissioner
determines the claimant's impairments meet or equal one of the
listed impairments that the Commissioner acknowledges are so
severe as to preclude substantial gainful activity.  20 C.F.R.
§ 404.1520(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The
criteria for the listed impairments, known as Listings, are
enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed
Impairments).

If the Commissioner proceeds beyond Step Three, she must
assess the claimant's residual functional capacity (RFC).  The
claimant's RFC is an assessment of the sustained, work-related
physical and mental activities the claimant can still do on a
regular and continuing basis despite his limitations.  20 C.F.R.
§ 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A
'regular and continuing basis' means 8 hours a day, for 5 days a
week, or an equivalent schedule."  SSR 96-8p, at *1.  In other
words, the Social Security Act does not require complete
incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec.
Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v.
Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform
work he has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv).
*See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine
whether the claimant is able to do any other work that exists in
the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  *See also*
*Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the
Commissioner to show a significant number of jobs exist in the
national economy that the claimant can perform.  *Lockwood v.*
*Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).
The Commissioner may satisfy this burden through the testimony
of a VE or by reference to the Medical-Vocational Guidelines (or
the grids) set forth in the regulations at 20 C.F.R. part 404,
subpart P, appendix 2.  If the Commissioner meets this burden,
the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in
substantial gainful activity since March 31, 2012, Plaintiff's
alleged disability onset date.  Tr. 28.

At Step Two the ALJ found Plaintiff has the severe

impairments of anxiety, depression, and PTSD.  Tr.28.

At Step Three the ALJ concluded Plaintiff's medically
determinable impairments do not meet or medically equal one of
the listed impairments in 20 C.F.R. part 404, subpart P,
appendix 1.  Tr. 29.  The ALJ found Plaintiff has the RFC to
perform a full range of work at all exertional levels with the
limitations of simple, repetitive, routine tasks without contact
with the general public and only brief, superficial contact with
co-workers and peers.  Tr. 31.

At Step Four the ALJ concluded Plaintiff is unable to
perform his past relevant work.  Tr. 40.

At Step Five the ALJ found Plaintiff can perform other jobs
that exist in the national economy such as laundry worker,
industrial cleaner, and dryer attendant.  Tr. 42.  Accordingly,
the ALJ found Plaintiff is not disabled.  Tr. 42.


## **DISCUSSION**

Plaintiff contends the ALJ erred when he failed (1) to
admit the report of Walter Winfree, Ph.D., Plaintiff's treating
psychologist; (2) to provide clear and convincing reasons for
rejecting the medical opinions of Dr. Winfree, Gary Sacks,
Ph.D., and Luke Patrick, Ph.D., examining psychologists; (3) to

evaluate Plaintiff's RFC correctly; (4) to provide clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony; and (5) to provide germane reasons for discounting the lay-witness statements.

## I.  The ALJ erred when he failed to admit Dr. Winfree's report.

Plaintiff contends the ALJ erred at the hearing when he failed to admit Dr. Winfree's report dated March 14, 2018. Plaintiff also contends the ALJ failed to consider Dr. Winfree's opinion that Plaintiff has multiple "marked" mental-health limitations.  In response the Commissioner contends the ALJ did not err when he refused to admit the report, and, in any event, the error was harmless.

### A.  Background

Dr. Winfree completed a mental-health questionnaire on March 14, 2018.  Tr. 17-21.  On Friday, March 16, 2018, Dr. Winfree emailed the completed questionnaire to Plaintiff's counsel, who was out of his office that afternoon.  Plaintiff's counsel discovered the questionnaire the next day (Saturday, March 17, 2018) and immediately emailed it to the ALJ through the Commissioner's electronic filing system.  On Sunday, March 18, 2018, Plaintiff's counsel submitted a letter to explain the circumstances that caused the late submission.

Tr. 343.  Plaintiff's hearing before the ALJ was scheduled for Friday, March 23, 2018.

At the hearing on March 23, 2018, the ALJ did not admit Dr. Winfree's report on the ground that Plaintiff did not submit the report within five business days before the hearing as required by 20 C.F.R. § 404.935(b).  The ALJ noted: "Obtaining a medical source statement and submitting it in a timely matter is entirely within the control of the representative and the claimant.  It is similar to that of an interrogatory, the obtainment of which is again solely within control of the Representative."  Tr. 26.  The ALJ concluded Plaintiff had not provided any "reason for the failure to submit [the evidence] no later than five business days before the date of the hearing."  *Id.*

**B.    Standards**

20 C.F.R. § 404.935 governs the submission of written evidence to an ALJ.  Section 404.935 provides:

> (a) . . . .  Each party must make every effort to ensure that the administrative law judge receives all of the evidence and must inform us about or submit any written evidence . . . no later than 5 business days before the date of the scheduled hearing.  If you do not comply with this requirement, the administrative law judge may decline to consider or obtain the evidence, unless the circumstances described in paragraph (b) of this section apply.

(b) If you have evidence . . . but you have
missed the deadline described in paragraph (a) of
this section, the administrative law judge will
accept the evidence if he or she has not yet
issued a decision and you did not inform us about
or submit the evidence before the deadline
because:

* * *

(3) Some other unusual, unexpected, or
unavoidable circumstance beyond your control
prevented you from informing us about or
submitting the evidence earlier.  Examples
include, but are not limited to:

* * *

(iv) You actively and diligently sought
evidence from a source and the evidence was not
received or was received less than 5 business
days prior to the hearing.

## C.    Analysis

In Plaintiff's letter submitted to the ALJ with

Dr. Winfree's report Plaintiff's counsel stated:

We diligently attempted to supplement the
record. . . .  [W]e sought Dr. Winfree's opinion
in adequate time to receive it in early March (we
submitted the updated VA records on March 5).
Only after multiple requests by my client and his
wife did we finally receive Dr. Winfree's
opinion.  I was out of the office the afternoon
of Friday[,] March 16 but worked on Saturday[,]
March 17.  As soon as I found Dr. Winfree's
opinion in my email box from Friday afternoon[,]
I submitted it into the ERE.

Tr. 343.

At the hearing Plaintiff's counsel requested the

admission of Dr. Winfree's report.  The ALJ declined to admit

the report and stated:

> I appreciate the fact that you diligently did
> your best to get the document to provide the
> report, and that's great, I appreciate that.
> And, it sounds like it's the doctor's fault that
> he didn't get it in as soon as he did, but I
> don't think that warrants an exception to the
> five-day rule, sir.
>
> * * *
>
> It's unfortunate that the doctor didn't get it
> within the five days, but I didn't see an
> exception to the five-day rule.  I did read your
> brief.  I appreciate that you did everything you
> could to get the document be cooperative [*sic*].
> It's unfortunate you didn't get it within five
> days.  So, I did not see any basis for finding an
> exception in this case.

Tr. 54-55.  Although the ALJ did not admit or consider

Dr. Winfree's report, it was made a part of the record.

        The Commissioner notes Plaintiff "may meet" the

exception to the five-day requirement, but in a footnote in his

Response Brief the Commissioner contends Plaintiff did not

"clearly establish" that he meets the "black letter requirements

of the exception" to the rule.  Def.'s Resp. (#14) at 6 n.1.

Nevertheless, the Commissioner acknowledges Plaintiff did not

"receive" the report until the fifth business day before the

hearing and does not assert Plaintiff was not diligent in

obtaining the report.  In fact, Plaintiff's counsel promptly

13 - OPINION AND ORDER

submitted the report as soon as he was aware that he had received it.

Section 404.935 states the ALJ "will accept" evidence submitted less than five days before a hearing if a decision has not been issued and the Plaintiff's failure to submit the evidence was a result of circumstances beyond the plaintiff's control despite active and diligent efforts to obtain the evidence within the required time. The commentary to § 404.935 provides:

> When a claimant or representative shows that he or she made a good faith effort to timely request, obtain, and submit evidence, but he or she did not receive the evidence in time to submit it at least 5 business days before the hearing because of circumstances outside his or her control, we expect that our adjudicators would find that this standard is met.

81 Fed. Reg. 90990 (Dec. 16, 2016).

Here, as noted, Dr. Winfree's report was submitted before the ALJ issued his decision, the ALJ acknowledged Plaintiff diligently sought to obtain the report, and Dr. Winfree delayed in submitting the report to Plaintiff's counsel in a timely manner.

After considering the totality of the circumstances, the Court concludes the ALJ erred when he failed to admit Dr. Winfree's report as evidence, and, as discussed below, the

Court concludes the ALJ's error was not harmless.

## II. The ALJ erred when he failed to consider properly the opinions of Drs. Winfree, Sacks, and Patrick.

Plaintiff contends the ALJ failed to consider properly the opinions of Drs. Winfree, Sacks, and Patrick regarding Plaintiff's mental-health limitations and failed to include those limitations in his assessment of Plaintiff's RFC.

### A. Standards

"In disability benefits cases . . . physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability — the claimant's ability to perform work." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). "In conjunction with the relevant regulations, [courts] have . . . developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008). Specifically, the court must "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Garrison*, 759 F.3d at 1012. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors

who do not treat the claimant." *Id.* Although the opinion of a treating physician is entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a nonexamining physician. *Ryan,* 528 F.3d at 1198. "The weight afforded a nonexamining physician's testimony depends 'on the degree to which [he] provide[s] supporting explanations for [his] opinions.'" *Id.* (quoting 20 C.F.R. § 404.1527(d)(3)).

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* Even when contradicted, a treating or examining physician's opinion is still owed deference and will often be "entitled to the greatest weight . . . even if it does not meet the test for controlling weight." *Orn v. Astrue,* 495 F.3d 625, 633 (9th Cir. 2007). An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick,* 157 F.3d at 725. "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors',

are correct." *Id.* (citation omitted).

**B.   Analysis**

**1.   Dr. Winfree**

Dr. Winfree has been Plaintiff's treating psychologist since October 2017.  As noted, on March 14, 2018, Dr. Winfree submitted a report evaluating Plaintiff's mental-health condition.  As noted, the ALJ rejected Dr. Winfree's report as untimely and did not consider the report in his evaluation of Plaintiff's RFC.  Tr. 25.

The Commissioner concedes Dr. Winfree's report is part of the record and that this Court must consider it when determining whether the ALJ's conclusions are supported by substantial evidence.  Def.'s Resp. (#14) at 7.  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1165 (9th Cir. 2012).  The Commissioner, however, asserts the ALJ considered Dr. Winfree's treatment notes in place of his report, and those notes support the ALJ's determination that Plaintiff is not disabled.  Thus, the Commissioner asserts the ALJ's error was harmless.

Dr. Winfree treated Plaintiff from October 2017 through March 2018.  Tr. 1346-92.  Although the ALJ characterized Dr. Winfree's treatment notes as showing "mental

health status findings were normal" and "mental status exam as
unremarkable," Dr. Winfree's mental-status examination notes
show otherwise.  For example, Dr. Winfree's treatment notes
indicate Plaintiff had ongoing symptoms of depression, PTSD,
suicidal ideation, insomnia, low energy, feelings of guilt, and
difficulty relating to other; became easily annoyed and
irritable; was hypervigilant; had negative thoughts about
himself and the world; exhibited avoidance; and felt distant
from others.  Tr. 1346, 1379, 1381, 1386, 1389, 1394.
Based on these treatment notes, Dr. Winfree indicated in his
report that Plaintiff had "marked" limitations in his ability to
apply information to a task, to interact with others, to persist
and to maintain pace in order to complete a task, and to adapt
and to maintain himself in the workplace.  Tr. 18-19.  He also
noted Plaintiff would not be able to perform work-related
activities for 33% or more of a full-time schedule and would
miss four or more days per month because of mental-health
issues.  Tr. 20.

          The Commissioner, however, points out that
Dr. Winfree began treating Plaintiff in October 2017 after the
date Plaintiff was last insured, and at that time Plaintiff
showed only short-term exacerbation.  In addition, the

Commissioner contends the ALJ fully considered all of Dr. Winfree's notes when assessing Plaintiff's impairments, that Dr. Winfree's assessment of Plaintiff's limitations as stated in his report "bears no resemblance to his own treatment notes," and that Dr. Winfree's treatment notes "reflect[] no such severe limitations."

After reviewing Dr. Winfree's report and treatment notes, the Court finds they are not inconsistent and that Dr. Winfree's report was based on Plaintiff's pre-existing medical records from the Veteran's Administration together with his own notes regarding his treatment of Plaintiff. Tr. 21. Dr. Winfree's report was also consistent with Dr. Sacks's evaluation (discussed below), and Dr. Sacks's opinion was the basis for the VA's determination that Plaintiff was 100% disabled as a result of his service-connected PTSD in 2011.

In any event, based on Dr. Winfree's treatment notes, the ALJ found Plaintiff is not disabled "without providing a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings" to explain why the ALJ interpreted those records as he did. *See Garrison,* 759 F.3d at 1012.

On this record the Court concludes the ALJ erred

when he rejected Dr. Winfree's opinion and failed to provide legally sufficient reasons supported by substantial evidence in the record for doing so.

### 2. Dr. Sacks

On October 27, 2011, Dr. Sacks examined Plaintiff at the request of the VA in connection with Plaintiff's VA disability claim. Tr. 361-70. Dr. Sacks diagnosed Plaintiff with "PTSD with associated depression, chronic and severe." Tr. 362. Dr. Sacks summarized Plaintiff's level of occupational and social impairment as "deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood." Tr. 363-64. He also noted Plaintiff had "markedly diminished interest or participation in significant activities" and found Plaintiff's PTSD symptoms "cause clinically significant distress or impairment in social, occupational, or other important areas of functioning." Tr. 368. Dr. Sacks listed the following specific symptoms related to Plaintiff's PTSD: depressed mood; anxiety; suspiciousness; near-continual panic or depression affecting the ability to function independently, appropriately, and effectively; impairment of short- and long-term memory with retention of only highly learned material while forgetting to complete tasks; difficulty in understanding complex commands;

impaired judgment; gross impairment in thought processes or communication; difficulty in establishing and maintaining effective work and social relationships; difficulty in adapting to stressful circumstances, including work or a work-like setting; inability to establish and to maintain effective relationships; suicidal ideation; obsessional rituals that interfere with routine activities; and impaired impulse control such as unprovoked irritability with periods of violence. Tr. 368-69. Dr. Sacks attributed Plaintiff's IBS to anxiety associated with his PTSD. Tr. 370. Dr. Sacks also stated:

> The potential association of PTSD and IBS is best commented upon by a medical doctor, but this psychologist wishes to note that the vet is highly anxious as a result of PTSD. He bites his nails during interview and immediately upon cessation of interview asks for direction to the nearest bathroom. Please consider carefully a medical opinion regarding the relationship between [PTSD] and his nervous stomach.

*Id.* The VA rated Plaintiff 100% disabled because of his PTSD and 30% disabled because of IBS associated with his PTSD. Tr. 183.

Although the ALJ need not analyze a disability determination by another governmental agency such as the VA, the Plaintiff points out that ALJ must "consider all of the supporting evidence underlying the other governmental agency or

nongovernmental entity's decision that [is] receive[d] as evidence" in Plaintiff's claim.  20 C.F.R. § 404.1513(a)(2). Moreover, § 404.1520c requires the ALJ to evaluate and to consider all medical opinions and prior administrative medical findings and to apply specific factors:  supportability, consistency, relationship with the claimant, and specialization. 20 C.F.R. § 404.1520c(b)(3).  Although the ALJ stated he "considered medical evidence received from the V.A." (Tr. 37), the ALJ did not reference Dr. Sacks's evaluation and did not articulate if and how he applied those specific factors to determine how much weight to give Dr. Sacks's opinion.  As noted, Dr. Sacks examined Plaintiff in connection with the Plaintiff's VA disability claim.  Nevertheless, the ALJ did not address Dr. Sacks's opinion in his decision.

On this record the Court concludes the ALJ erred when he failed to consider Dr. Sacks's opinion and failed to provide legally sufficient reasons supported by substantial evidence in the record for doing so.

### 3.  Dr. Patrick

On July 19, 2017, Dr. Patrick performed a consultative psychological evaluation of Plaintiff at the Commissioner's request.  Tr. 1212-14.  Dr. Patrick concluded

Plaintiff has a mild to moderate impairment with understanding and remembering instructions, a moderate impairment with attention and concentration, a marked impairment with persistence, and a severe impairment in social interaction. Tr. 1214.

The ALJ concluded Dr. Patrick's opinion was "not persuasive." Tr. 36. The ALJ noted Plaintiff's primary-care physician, Devan Kansagara, M.D., found Plaintiff's condition was "stable" over time while taking medications. Although the ALJ also noted Plaintiff's condition improved following a "flare" in his symptoms during September and October 2017, the record reflects Dr. Patrick examined Plaintiff in July 2017, which was before this flare. The ALJ also found Plaintiff's activities were inconsistent with a finding of severe social-interaction difficulties and noted Plaintiff took a Russian language class, cared for his children, repaired computers, shopped online, planned to join a gym, and traveled to California. The record, however, reflects Plaintiff reported the language class caused him stress and anxiety, and his wife stated the class made Plaintiff irritable and withdrawn. Tr. 316-17, 1346, 1375. A teacher at his children's former school stated she found it hard to communicate with Plaintiff

and that he avoided eye contact, stood away from other parents
when picking up his children from school, and seldom attended
school activities.  Tr. 314.  Plaintiff's wife stated the travel
to California was a Veteran's Day event at Knotts Berry Farm
that had a lot of security, but Plaintiff constantly looked
around scanning for danger and did not participate in any of the
activities.  Tr. 322.

          The ALJ also stated Dr. Patrick's assessment of
Plaintiff's marked persistence limitation is "inconsistent with
[Plaintiff's] performance on the mental status exam, when he had
minimal errors on serial sevens and related tasks."  Tr. 36.
Dr. Patrick, however, noted Plaintiff made errors on several
recall tests, spoke slowly, and had limited insight and
judgment.  Tr. 1214.  Dr. Patrick's assessment was based on
Plaintiff's "presentation" as well as testing.  Tr. 1214.

          The ALJ concluded although Dr. Patrick is a
psychologist who performs consultative examinations, "these
facts do not make his analysis more persuasive" (Tr. 36); the
examination was performed at the request of the Commissioner;
and Dr. Patrick only examined Plaintiff one time.  The Social
Security regulations specifically state "a medical source who
has received advance education and training to become a

specialist may be more persuasive" and their "understanding of our disability program's policies and evidentiary requirements" tend to support a medical opinion by such experts.  *See* 20 C.F.R. § 404.1520c(c).

On this record the Court concludes the ALJ erred when he rejected Dr. Patrick's opinion and failed to provide specific and legitimate reasons supported by substantial evidence in the record for doing so.

**III. The ALJ erred in his assessment of Plaintiff's RFC.**

Plaintiff contends the ALJ erred when he found Plaintiff had "moderate limitations" with understanding, remembering, or applying information and with concentration, persistence, and pace in his "paragraph B" analysis at Step Three and, nonetheless, concluded in his assessment of Plaintiff's RFC that Plaintiff had the ability to perform "simple, repetitive, routine tasks."  Tr. 31.

"[T]he Ninth Circuit has found failure to include 'difficulties with concentration, persistence, or pace' in the VE hypothetical to be reversible error when the ALJ found such a limitation at step three." *Saucedo v. Colvin*, No. 6:12-cv-02289, 2014 WL 4631225, at *17 (D. Or. Sep. 15, 2014)(citing *Lubin v. Comm'r Soc. Sec. Admin*, 507 F. App'x 709, 712 (9th Cir.

2013)). *See also Gray v. Colvin*, No. 6:15-cv-00647-BR, 2016 WL 3392313, at *5 (D. Or. June 13, 2016)(same).

Here the ALJ found as part of his paragraph B analysis at Step Three that Plaintiff has a "moderate limitation" in "understanding, remembering, or applying information" and in "concentrating, persisting, or maintaining pace." Tr. 30. The ALJ also explained "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3," and the ALJ pointed out that the "mental residual functional capacity assessment . . . requires a more detailed assessment." Tr. 31. Even though the ALJ in his assessment of Plaintiff's RFC found Plaintiff could "perform a full range of work at all exertional levels" with a nonexertional limitation to perform "simple, repetitive, [and] routine tasks" (Tr. 31), the record does not include an opinion from any medical expert who interpreted Plaintiff as having a functional capacity to perform "simple, repetitive, routine tasks" in spite of his moderate limitation in concentration, persistence, or pace. In fact, Dr. Patrick specifically assessed Plaintiff with "marked" impairment in persistence and "moderate" impairment in understanding and remembering

instructions, attention, and concentration (Tr. 1214), but he did not find Plaintiff is capable of performing simple, routine, repetitive tasks. Similarly, Dr. Winfree opined Plaintiff has "marked" impairment in his ability to apply information, to persist to completion of a task, and to maintain pace as well as "moderate" limitations in concentration, understanding, and remembering information. Tr. 18-19.

Although the ALJ's evaluation of Plaintiff's RFC may be supported by substantial evidence in isolation, the ALJ did not explain the internal inconsistencies between his Step Three findings as to Plaintiff's limitations.

Accordingly, on this record the Court concludes the ALJ erred when he made inconsistent findings in his "paragraph B" analysis at Step Three and his assessment of Plaintiff's RFC.

**IV. The ALJ erred when he failed to provide clear and convincing reasons for discounting Plaintiff's symptom testimony.**

Plaintiff contends the ALJ erred when he failed to provide clear and convincing reasons for discounting Plaintiff's symptom testimony.

**A. Standards**

The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or

symptoms is credible.  "First, the ALJ must determine whether
the claimant has presented objective medical evidence of an
underlying impairment 'which could reasonably be expected to
produce the pain or other symptoms alleged.'"  *Garrison v.
Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter
v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  The
claimant need not show his "impairment could reasonably be
expected to cause the severity of the symptom [he] has alleged;
[he] need only show that it could reasonably have caused some
degree of the symptom."  *Garrison*, 759 F.3d at 1014 (quoting
*Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  A
claimant is not required to produce "objective medical evidence
of the pain or fatigue itself, or the severity thereof."  *Id.*

    If the claimant satisfies the first step of this
analysis and there is not any affirmative evidence of
malingering, "the ALJ can reject the claimant's testimony about
the severity of [his] symptoms only by offering specific, clear
and convincing reasons for doing so."  *Garrison*, 759 F.3d at
1014-15.  *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880,
883 (9th Cir. 2006)("[U]nless an ALJ makes a finding of
malingering based on affirmative evidence thereof, he or she may
only find an applicant not credible by making specific findings

as to credibility and stating clear and convincing reasons for each.").  General assertions that the claimant's testimony is not credible are insufficient.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007).  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

## B.   Analysis

Plaintiff testified he is unable to concentrate or to follow instructions, to adapt to unfamiliar surroundings, and to interact appropriately with others.  Plaintiff also testified he is chronically tired because of nightmares that disrupt his sleep and that persistent IBS causes him to spend significant time in a restroom even on days he does not experience unusual stress.  Tr. 64, 73-74, 247-54.  The ALJ discounted Plaintiff's symptom testimony on the grounds that it conflicted with the medical evidence and was inconsistent with Plaintiff's activities.  Tr. 32-36.

### 1.   Medical Evidence

The ALJ concluded Plaintiff's symptom testimony conflicted with medical evidence showing his mental-health symptoms were "well-controlled with medications."  Tr. 33.  The

ALJ relied on treatment records from Kate Blummer, M.D., and Dr. Kansagara, two of Plaintiff's physicians. On February 7, 2012, Dr. Blummer followed up on her previous treatment of Plaintiff and noted Plaintiff was "overall better" since his treatment in November, but Plaintiff continued to have intrusive memories triggered by certain smells and still occasionally had thoughts of suicide when going to bed. Tr. 351. Three months later in May 2012, however, Plaintiff contacted his therapist to request mental-health treatment and reported difficulty relaxing, trouble falling asleep, worry, and memories of his past thoughts of suicide. Tr. 554-55.

On July 2014 Dr. Kansagara noted Plaintiff's dyspepsia was "controlled" on medication and that Plaintiff was "doing well" on his medication for depression. Tr. 493. The ALJ relied on this statement to support his conclusion that Plaintiff's mental-health symptoms were "well controlled" on medication. Tr. 33. Dr. Kansagara, however, also noted although Plaintiff "overall was much improved, some days [he] still feels 'numb.'" Tr. 493.

In summary, the ALJ's assessment of Plaintiff's symptom testimony is contradicted by the findings of Dr. Winfree, who assessed Plaintiff with several "marked"

mental-health limitations (Tr. 17-21); the findings of
Dr. Sacks, who assessed Plaintiff with a severe level of social
and occupational impairments (Tr. 361-70); and the findings of
Dr. Patrick, who assessed Plaintiff with a "marked" impairment
with persistence and a "severe" impairment in social interaction
(Tr. 1212-14).

The ALJ also found Plaintiff's IBS was nonsevere.
Plaintiff testified about the severity of his IBS symptoms,
which, according to Plaintiff, caused him to spend 30 minutes or
more in the bathroom two or three times a day even on days
without unusual stress.  Tr. 73-74, 253.  Although Plaintiff did
not challenge the ALJ's finding that his IBS was nonsevere,
Dr. Sacks noted the association between Plaintiff's PTSD and his
IBS.  Tr. 370.

On this record the Court concludes the ALJ did
not provide legally sufficient reasons supported by the medical
record for discounting Plaintiff's symptom testimony.

### 2.  Activities of Daily Living

The ALJ also discounted Plaintiff's testimony on
the ground that it was inconsistent with Plaintiff's daily
activities.  Tr. 32-33.  As noted, the ALJ pointed out that
Plaintiff started taking Russian language classes, drove his

children to school, did household chores, picked up his wife from work, attended school functions, went on a hike with his wife, visited California with his family, and planned to join a gym. Plaintiff's activities, however, have a bearing on Plaintiff's credibility only if the level of activity is inconsistent with his alleged limitations. *See Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

The record reflects although Plaintiff attempts many activities, his limitations seriously limit his ability to perform those activities reliably and effectively. For example, Plaintiff testified he drove his children to school because getting them ready in the morning "is a big challenge," and they often missed the bus. Tr. 64. The record also reflects even though Plaintiff tries to do chores at home, he has difficulty prioritizing tasks, which "starts stressing [him] out"; friends and family members testified he gets frustrated and aggressive when driving (Tr. 314, 319, 323, 1213); although he enrolled in a Russian language class, it often made him more stressed and irritable (Tr. 316-17, 319-20, 322); and his hypervigilance and social anxiety interferes with his participation in his children's school activities and family outings (Tr. 322, 1213).

Accordingly, the Court concludes the ALJ erred

when he discounted Plaintiff's testimony and failed to provide clear and convincing reasons supported by substantial evidence in the record for doing so.

## V.  The ALJ failed to provide specific germane reasons for rejecting lay-witness testimony.

Plaintiff contends the ALJ erred when he failed to provide germane reasons for discounting eight lay-witness statements about Plaintiff's limitations.

### A.  Standards

Lay-witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless she "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).  Germane reasons for discrediting a lay-witness's testimony include inconsistency with the medical evidence and the fact that the testimony "generally repeat[s]" the properly discredited testimony of a claimant.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  *See also Williams v. Astrue*, 493 F. App'x 866 (9th Cir. 2012).

The ALJ is not required, however, "to discuss every

witness's testimony on a[n] individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012.)

**B.  Analysis**

Plaintiff submitted statements from the following friends and relatives:  Inna Opanasyuk, a teacher at Plaintiff's children's school (Tr. 314); Veida Lekakh, Plaintiff's sister-in-law (Tr. 324); Irina Milyaskaya, Plaintiff's aunt (Tr. 323); Yelizaveta "Liz" Russ, Plaintiff's wife (Tr. 239-46, 321-22); Lidia Lekakh, Plaintiff's mother-in-law (Tr. 319-20); Alina Markovitz, Plaintiff's cousin (Tr. 318); Veniamin Lekakh, Plaintiff's father-in-law (Tr. 316-17); and Tatyana Gernega, a caregiver for Plaintiff's grandmother (Tr. 315).  These individuals noted Plaintiff is difficult to communicate with; avoids people; is a recluse who struggles with communication, focus, and punctuality; is agitated and withdraws socially; is forgetful and unreliable; has survivor's guilt and experiences constant nightmares; is hypervigilant, anxious, depressed, and socially isolated; is paranoid; is unable to perform computer

support tasks he did in the past; struggles with daily chores;
does not express himself; and becomes angry and frustrated
easily.  *Id.*

The ALJ concluded each of these statements was not
persuasive based on Plaintiff's activities and was not
consistent with the medical evidence.  Specifically, the ALJ
pointed to Dr. Kansagara's records that indicate Plaintiff
showed stable mental functioning over time while taking
medications.  Tr. 37-40.  The ALJ also noted he is not required
to articulate how evidence from "nonmedical sources" has been
considered.  20 C.F.R. § 404.1520c(d).

An inconsistency with medical evidence is a germane
reason for discrediting the testimony of lay witnesses.  *Bayliss
v. Barnhart*, 427 F.3d 1211, 1219 (9th Cir. 2005).  The mere lack
of support from medical records, however, is not a germane
reason to discount lay-witness testimony.  *Diedrich v.
Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017).  Here the ALJ
failed to describe any specific inconsistency between each
witness's statement and the medical evidence.  Moreover, the
ALJ's reliance on § 404.1520c(d) is misplaced.  Section
404.1520c states how the Commissioner "will consider and
articulate medical opinions and prior administrative medical

findings" for claims after March 27, 2017 and describes factors to be considered when evaluating medical opinions. Although § 404.1520c(d) states the Commissioner is "not required to articulate how we consider evidence from nonmedical sources" using the same criteria for medical sources, it does not eliminate the need for the ALJ to articulate his consideration of lay-witness statements and his reasons for discounting those statements.

On this record the Court concludes the ALJ erred when he rejected the lay-witness statements and failed to provide specific, germane reasons for doing so.

## REMAND

The Court must determine whether to remand this matter for further proceedings or to remand for the calculation and payment of benefits.

The decision whether to remand for further proceedings or for payment of benefits generally turns on the likely utility of further proceedings. *Carmickle*, 533 F.3d at 1179. The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The court should grant an immediate award of benefits when

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

As noted, the Court concludes the ALJ erred when he failed to provide legally sufficient reasons supported by substantial evidence in the record for discounting the opinions of Drs. Sacks and Patrick regarding Plaintiff's limitations. The ALJ also erred when he improperly failed to admit and to consider Dr. Winfree's report, which was consistent with the opinions of Drs. Sacks and Patrick. Finally, the ALJ also erred when he failed to provide legally sufficient reasons for discounting Plaintiff's symptom testimony and the statements of

lay witnesses that supported Plaintiff's symptom testimony.
Thus, the Court concludes consideration of the record as a whole
establishes that the ALJ would be required to find Plaintiff
disabled and to award benefits if this evidence was credited.

Accordingly, the Court remands this matter for the
immediate calculation and payment of benefits.


## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the
Commissioner and **REMANDS** this matter pursuant to sentence four
of 42 U.S.C. § 405(g) for the immediate calculation and payment
of benefits.

IT IS SO ORDERED.

DATED this 10th day of September, 2019.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States Senior District Judge